[No. 20065.   Department Two. — February 25, 1886.]

## THE PEOPLE, Respondent, *v.* E. P. McCURDY, Appellant.

Criminal Law — Murder — Order for Commitment — Warrant of Commitment — Presumption. — In a prosecution for murder, where the order of commitment indorsed upon the depositions taken before the examining magistrate provides that the defendant be committed to the custody of the sheriff, without bail, it will be presumed, in the absence of a showing to the contrary, that a warrant of commitment, as required by section 877 of the Penal Code, was made out and delivered to the proper officer, and that it contained every essential requisite.

Id. — Information — Date of Filing. — Where the order committing the defendant to answer is filed on the same day with the filing of the information, it will be presumed in favor of the regularity of the proceedings, there being no showing to the contrary, that the information was filed subsequent to the commitment.

Id. — Irregularity in Examination or Commitment. — A defendant cannot be prosecuted by information, until after an examination and commitment by a magistrate; but it does not follow that an information will be set aside for mere irregularities in the examination or commitment.

Id. — Sufficiency of Order of Commitment. — A commitment indorsed upon the depositions, and signed by the justice in the following form, viz.: "It appearing to me that the offense in the written depositions mentioned has been committed, and that there is sufficient cause to believe the within-named [giving name] guilty thereof, I order that he be held to answer to the same," etc., — is in the language of section 872 of the Penal Code, and sufficient.

Id. — Verdict — Conflict of Evidence. — Where the evidence is conflicting, a verdict of conviction will not be set aside on the ground that it is contrary to the evidence.

Id. — Inspection of Objects by Jury — Presumption. — The defendant was prosecuted for the crime of murder. At the trial, and after the testimony had been closed, and after the arguments of counsel and instructions by the court, the jury, at their own request, inspected certain articles of apparel referred to in the evidence, and worn by the defendant and

the prosecuting witness on the day of the alleged homicide. No objection was made by the prosecution or defense to this action. *Held*, that it would be presumed the inspection was made by consent of all parties.

ID. — JUROR CONVERSING ABOUT CASE. — During the progress of the trial, while certain persons were conversing about the case, a juror joined them. One of the speakers called attention to the fact that a juror was present, and remarked that they must not talk. To this the juror replied that "they might go ahead, it wouldn't make any difference to him." *Held*, that the remark of the juror was not improper.

ID. — INSTRUCTIONS AS TO PENALTY. — Certain instructions stated in the opinion examined, and *held*, that the jury was properly instructed in reference to the penalty attaching to a verdict of guilty of murder in the first degree.

ID. — MEASUREMENTS OF FOOT-PRINTS — EVIDENCE. — On the trial, evidence of the measurements of certain foot-prints found in the vicinity of the place of the homicide, and corresponding with the foot-prints of the defendant, was admitted. The measurements were made respectively about five days and two weeks after the date of the homicide. *Held*, that the evidence was admissible.

ID. — NEW TRIAL — NEWLY DISCOVERED EVIDENCE. — A new trial will not be granted on the ground of newly discovered evidence, if the affidavits on which the motion therefor is based fail to explain why the evidence could not have been procured at the trial, or when the evidence would merely tend to impeach the testimony of a witness for the prosecution, or is cumulative.

APPEAL from an order of the Superior Court of Lake County refusing a new trial, and from an order refusing an arrest of judgment.

The motion for a new trial was made on the ground, among others, of newly discovered evidence. The further facts are stated in the opinion.

*Murat Masterson*, and *Ben. P. Tabor*, for Appellant.

The verdict was not supported by the evidence, and should be set aside. (*People* v. *Baker*, 29 Cal. 686; *People* v. *Lewis*, 36 Cal. 531; *People* v. *Hamilton*, 46 Cal. 543; *Peri* v. *People*, 65 Ill. 17; *Owen* v. *State*, 35 Tex. 361; *Gorman* v. *State*, 38 Tex. 166; *State* v. *Webb*, 41 Tex. 67; *Falk* v. *People*, 42 Ill. 331; *Simpson* v. *State*, 3 Tex. App. 425; *State* v. *Hammond*, 5 Strob. 91; *Garland* v. *State*, 2 Swan, 18; *Leake* v. *State*, 10 Humph. 479; *Cochrane* v. *State*, 7 Humph. 544.)

*Attorney-General Marshall,* for Respondent.

SEARLS, C.—The defendant was accused by information of the murder of one Charles W. Dreher, in the county of Lake, on the fourteenth day of July, 1884, and as the result of a trial, was convicted of murder in the first degree, and sentenced to suffer the extreme penalty of the law.

The appeal is from an order denying a motion for a new trial, and from an order denying a motion in arrest of judgment.

The information was filed on the thirteenth day of August, 1884.

On the eighteenth day of August, 1884, defendant by his counsel moved the court to set aside the information, upon the ground, "that before the filing thereof the defendant had not been legally committed by a magistrate, in this: the commitment indorsed upon the depositions herein does not state the name of the person alleged to have been murdered, nor is it dated."

The motion was denied.

The order indorsed upon the depositions was almost in the exact language of section 872 of the Penal Code, and was sufficient.

As the order of the justice provided that the defendant be committed to the custody of the sheriff of Lake County, without bail, we must presume, in the absence of a showing to the contrary, that a warrant of commitment, as required by section 877 of the Penal Code, was made out and delivered to the proper officer, and that it contained every essential requisite.

Whereas in this case the order committing the defendant to answer was filed on the same day with the filing of the information, we must presume in favor of the regularity of the proceedings, there being no showing to the contrary, that the information was filed subsequent to the commitment.

If such was not the fact, it devolved upon the defendant to show it affirmatively. Filing the order of commitment sufficiently fixes the date, and it is to be read in connection with the depositions which show that an examination was had.

A defendant cannot be presented by information until after an examination and commitment by a magistrate. (Constitution of California, art. 1, sec. 8; Pen. Code, sec. 809; *Kalloch* v. *Superior Court*, 56 Cal. 229.)

The examination and commitment to answer are a prerequisite to the information, but it does not follow that the information will be set aside for mere irregularities in the examination or commitment.

If the commitment is legal, it is sufficient. A commitment indorsed upon the depositions and signed by the justice in the following form is in the language of section 872 of the Penal Code, and is sufficient:—

"It appearing to me that the offense in the within depositions mentioned has been committed, and that there is sufficient cause to believe the within-named (giving name) guilty thereof, I order that he be held to answer to the same," etc.

The warrant of commitment to be delivered to the officer is a different order, and is provided for by section 877, Penal Code.

2. The testimony as to the guilt of defendant was conflicting to the last degree. Accepting the statements of Fred Dreher, a brother of deceased, as true, and there can be no reasonable doubt of the guilt of defendant.

If, on the other hand, the testimony of the defendant is to be credited, a well-grounded apprehension is raised that Fred Dreher himself, and not the defendant, was the guilty party.

The situation of the parties, the surrounding circumstances, the incentives to the crime, and all of the probabilities, were questions peculiarly within the province of the jury to determine.

There being evidence sufficient to support the verdict, we are not at liberty under the well-established rules of this court to interfere with such verdict upon the ground that it is contrary to the evidence.

3. At the trial and after the testimony was closed, and after argument of the cause by counsel and instruction of the jury by the court, one of the jurors asked for the hat of the defendant, worn on the day of the alleged homicide, and also for that of the prosecuting witness, Fred Dreher, the brother of the deceased, and said hats being produced were received and examined by the jury. The bill of exceptions states that there had been no testimony in reference to the hats, but this is manifestly a mistake, for when the testimony comes to be stated, it appears that after the deceased was missed from camp, and defendant and Fred Dreher had gone in quest of him, and had had a deadly encounter near where the body of deceased was afterward found, which encounter each charges the other with having commenced, and after both parties had fled from the spot, Fred Dreher was found to have defendant's hat, while his own was afterward found at the scene of the encounter, and defendant next appeared at Stanton's ranch without a hat.

Under these circumstances, it is probable the jurors desired to examine the hats for evidence in corroboration of the witnesses.

No objection was taken by the prosecution or defense to this action, and in the absence of objection, we must assume it was by consent of all parties that the hats were submitted to the jury.

Had it been otherwise, it is not suggested and we do not see how defendant was prejudiced by this action of the court.

4. It is objected that J. A. Tennison, one of the jurors, acted in an improper manner.

So far as the record shows, the county clerk and one of the counsel for the prosecution, during the progress

of the trial, were engaged in conversation in reference to the case, when the juror Tennison joined them, whereupon the county clerk very properly called attention to the fact that Tennison was a juror, and said they must not talk, as "Lane is one of the jurors," to which Tennison replied to the effect that "they might go ahead, it wouldn't make any difference to him."

The remark seems to have been a correct one, and in it we fail to see any sufficient evidence of a disposition to act improperly in the case.

The only error founded upon the instructions is that "the court erred in instructing the jury to the effect that if they agreed upon the grade of the crime, but did not agree upon the punishment therefor, it was no verdict."

It appears from the record that after the jury had retired to deliberate upon their verdict, they returned into court for further instructions, whereupon the court proceeded at the request of the jury to instruct them that it was possible for them to find any one of four verdicts. "That it is possible you can say, 'We, the jury, find the defendant guilty of murder in the first degree,' if you find that degree without any recommendation. Or you can say, secondly, 'We, the jury, find the defendant guilty of murder in the first degree, and recommend that the punishment be imprisonment for life.' In order to do that, you find him guilty of murder first, then if you desire to imprison him for life, you agree upon that, and say so in your verdict."

A juror: Suppose we cannot agree upon that?

The court: Then it is possible for you to find him guilty of murder in the second degree.

The court then proceeded to tell the jury it was possible for them to find the defendant guilty of manslaughter or to find him not guilty.

The court also proceeded to inform the jury that they had nothing to do with the penalty following a verdict, except in case of verdict of murder in the first degree,

and to say that if they found such a verdict they should then proceed to determine the penalty, and after answering substantially the same question, it was again put by a juror in this wise:—

"The point we want to know is this: that if we can't agree upon the penalty, does that fail to bring in a verdict?" To which the court answered: "Yes,—that is, in this sense, if you agree upon a verdict of murder in the first degree, then you proceed to determine the penalty,— whether you want to recommend imprisonment for life. If you do not recommend imprisonment, then it is capital punishment fixed by law.".

A juror had previously asked this question:—

"In case we don't agree upon the penalty, then what?" To which the court answered: "Then it is not a verdict. If you bring in a verdict of murder in the first degree, then the penalty is death."

The court was not correct in his answer, that a failure to fix the penalty would result in no verdict, but in each instance he explained the effect by subsequent statements, so that the jury could not have been misled.

It was said in *People* v. *Doyell*, 48 Cal. 85: "We must take the charge together, and if, without straining any portion of the language, it harmonizes as a whole, and fairly and correctly presents the law bearing on the issues tried, we will not disturb the judgment because a separate instruction does not contain all the conditions and limitations which are to be gathered from the entire text."

When thus taken together, it is apparent from the charge that the jury was properly instructed as to the matter of the penalty attaching to a verdict of guilty of murder in the first degree. (*People* v. *Welch*, 49 Cal. 174.)

6. There was no error in admitting the evidence of Swinford and Stanton in relation to foot-prints.

The defendant, upon reaching the ranch upon the

evening of the homicide, described the place in the cañon at which he had left his bloody shirt, and some two weeks after the witness Stanton found the shirt at the spot indicated, and measured the foot-prints found at the point, which corresponded with similar marks found in the vicinity of the body of deceased by Swinford, five days after the homicide, and by him measured and found to fit the boots of defendant. These last foot-prints were shown the witness by Green, a witness who on the day of the homicide trailed the course taken by deceased and his companion from the camp to where the body was found, and who identified the foot-prints as those followed by him at that time.

Had the measurements of the foot-prints been made at an earlier day, the value of the information acquired as evidence would no doubt have been greater, but it does not follow that the testimony was incompetent.

7. The affidavits on motion for a new trial fall far short of filling the requirements essential to the end in view.

They give no reasons why the affiants could not have been present and testified at the former trial. They show that the only tendency of the evidence, if produced, would be to impeach the testimony of Fred Dreher, a witness for the prosecution. They are cumulative to like testimony for a like purpose introduced on the former trial, and one of them is contradicted, while the other does not seem of importance in the case.

We have been prompted by the gravity of the case to search with diligence the record presented for facts bearing upon the objections. This we have been compelled to do without any formal assignment of errors,—without an index to the record as full as it should have been, and without any reference in the brief on file to those portions of the transcript supposed to support the several contentions.

No blame is attached to the learned counsel who pre-

pared the very forcible brief for appellant, as it is said he resides in New Mexico; had no opportunity for access to the record, and only undertook the task of advocating· the cause of the prisoner from sympathy in his behalf, and not from any hope of remuneration.

Our examination has failed to develop any sufficient cause to warrant a reversal, and we are of opinion the orders overruling the motions for a new trial and in arrest of judgment should be affirmed.

FOOTE, C., and BELCHER, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the orders are affirmed.