95 N.J. Super. 1 (1967)
229 A.2d 673
STATE OF NEW JERSEY, RESPONDENT,
v.
JOHN F. FROST, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 10, 1967.
Decided May 1, 1967.
*2 Before Judges CONFORD, FOLEY and LEONARD.
Mr. Aldan O. Markson argued the cause for appellant (Messrs. Pollack & Markson, attorneys).
Mr. Edmund J. Tucker, Assistant Prosecutor, argued the cause for respondent (Mr. Leo Kaplowitz, Union County Prosecutor, attorney).
*3 The opinion of the court was delivered by LEONARD, J.A.D.
Defendant appeals by leave of court from an order of the Superior Court, Law Division, denying his motion to dismiss an indictment. The indictment recites that defendant, while in the custody of a municipal police officer by reason of a lawful arrest upon a charge of being a disorderly person, in violation of N.J.S. 2A:170-1, broke away by force and escaped from custody in contravention of N.J.S. 2A:104-6. That latter statute provides:
"Any person imprisoned or detained in a place of confinement, or being in the lawful custody or control of a penal or correctional institution or of an officer or other person, upon any charge, indictment, conviction or sentence for any crime, or upon any writ or process in a civil action or proceeding, or to await extradition, who by force or fraud escapes or attempts to escape from such place of confinement or from such custody or control, or leaves the building or grounds of his place of confinement without the consent of the officer in charge, is guilty of a misdemeanor." (Emphasis added)
Defendant contends that a disorderly persons offense is not a "crime" within the meaning of that word as used in the above quoted statute and therefore the indictment does not allege any violation of that statute. This contention is founded upon the argument that this criminal statute must be strictly construed, and that when all of the pertinent sections of chapter 104 of Title 2A of the New Jersey Statutes, including Section 6, and their statutory antecedents, are read together, there appears a clear legislative intent to restrict the meaning of the word "crime" in N.J.S. 2A:104-6 to an indictable offense.
Although, generally speaking, penal statutes are to be strictly construed, State v. Meinken, 10 N.J. 348 (1952), the rule of strict construction does not mean that the manifestations of the Legislature's intention for criminal responsibility should be disregarded. State v. Edwards, 28 N.J. 292, 298 (1958), State v. Rucker, 46 N.J. Super. 162, 167 (App. Div. 1957), certif. denied 25 N.J. 102 (1957). In construing allegedly ambiguous sections of any statute, *4 a reasonable interpretation should be made based on the legislative purpose as revealed by the composite thrust of the whole statutory scheme and in the light of its legislative history. State v. Congdon, 76 N.J. Super. 493, 500 (App. Div. 1962).
With these principles in mind we consider first the history of N.J.S. 2A:104-6. The first comprehensive legislative enactment treating with "escapes" and "rescues" was sections 6 to 13, inclusive, of chapter 235 of the Laws of 1898. Section 12 thereof (L. 1898, c. 235, § 12, p. 796) provided that any person who, being "imprisoned for any crime," broke prison whether successfully escaping or not, was guilty of a misdemeanor.
In 1920 (L. 1920, c. 272, § 1), section 12 was amended to read as follows:
"Any person who, being imprisoned for any crime, or in the custody or control of the sheriff, having been indicted for or convicted of any offense, or sentenced to imprisonment on such conviction, or committed or detained in such jail on any criminal charge, * * * shall break prison and escape, or escape from the custody and control of the sheriff, or shall break prison, although no escape be actually made, shall be guilty of a misdemeanor." (Emphasis added)
Section 12 was again amended (L. 1931, c. 94, § 1). This amendment retained the same operative language as the prior version but extended the places of confinement to include "any jail, prison, prison farm, reformatory or other correctional or penal institution" and further extended the coverage of an escape from the custody and control of the sheriff to include an escape from any "other officer."
In 1934 (L. 1934, c. 227, § 5) this section was again amended to substantially its present form (N.J.S. 2A:104-6) and included therein for the first time a person imprisoned or detained in a place of confinement or in custody of an officer upon "any charge, indictment, conviction or sentence for any crime, or upon any writ or process in any civil action or proceeding * * *." (Emphasis added)
*5 Although other sections of chapter 235 of the Laws of 1898 were also amended in 1934, section 13, which had been previously amended in 1920 and 1931, was not amended in 1934. Consequently this section, now N.J.S. 2A:104-7, still retains the operative language of the original statute (L. 1898, c. 235, § 13), which proscribes aiding or assisting the escape of any prisoner who has been "indicted for or convicted of any offense, or sentenced to imprisonment on such conviction, or committed or detained * * * on any criminal charge * * *." (Emphasis added)
It is apparent from the above review that the Legislature originally intended to punish "escapes" and "rescues" of all persons in custody or confinement for a "crime," for any "criminal charge" and for any "offense," and thereafter extended the law to include any "writ or process in any civil action" The Legislature presumably sought to deter all those imprisoned or detained from attempting to escape because of the great danger of violence such an attempt would involve and the unquestioned disruption of discipline that almost inevitably follows. State v. Hayes, 52 N.J. Super. 178, 187 (App. Div. 1958).
To uphold defendant's contention would be to arrive at the result that while a person detained by an officer under a civil writ who escapes is guilty of a misdemeanor, yet one arrested for a disorderly persons offense who escapes is not. Additionally, it would mean that the rescuer of a person who is confined or in the custody of an officer and who has been convicted of "any offense," or who is being detained in an institution on "any criminal charge," would be guilty of a misdemeanor (N.J.S. 2A:104-7), but that the escapee himself who had been so convicted or detained would go unpunished. We do not believe the Legislature could have intended such an incongruous result.
The category of disorderly persons offenses has been greatly increased by legislative downgrading of such conduct from crimes since 1950. Moreover, the number of offenders in this category has grown extensively in recent years. Great *6 numbers of these offenders are arrested daily and placed in jail or detained for judicial proceedings. When it is realized that N.J.S. 2A:104-6 covers persons imprisoned or confined in an institution as well as those, like defendant, in the custody of an officer, it becomes apparent that to allow defendant's contention to prevail would be to give to these many prisoners or detained persons the right of self-judgment and self-help free from criminal sanctions. Such a construction is neither reasonable nor consistent with the overall legislative purposes in enacting these statutes. Furthermore, this would result in a defiance of law enforcement officials which could produce unwarranted civil disorder and disrespect for law in the community. See State v. Koonce, 89 N.J. Super. 169, 184 (App. Div. 1965)
In People v. Serrano, 123 Cal. App. 339, 11 P.2d 81 (D. Ct. App. 1932), the defendant was placed in jail on "suspicion of forgery" and escaped before a formal charge was placed against him. The California escape statute (section 107 of the Penal Code) provides that "`Every prisoner charged with or convicted of a felony * * * who escapes * * * from such jail * * * is guilty of a felony.'" 11 P.2d, at pp. 81-82. Defendant moved to quash an information charging him with escape on the ground that he was not formally "charged" with the crime of forgery at the time of his incarceration. The lower court granted the motion and the appellate court, in reversing that decision, said:
"To interpret the words `charged with' * * * in the sense that a formal charge must have been filed against the prisoner would encourage escapes of the kind found in the case at bar and might cause the utmost confusion and disorder. We believe the Legislature intended that a more liberal construction should be given to that language * * *. `When a statute is fairly succeptible of two constructions, one leading inevitably to mischief or absurdity and the other consisting of sound sense and wise policy, the former should be rejected and the latter adopted.'"
In People v. Chesley, 282 App. Div. 821, 123 N.Y.S.2d 42 (App. Div. 1963), the court held that a youthful offender *7 who had escaped from a correctional institution, had been held therein for an "offense" within the meaning of the Penal Law, McKinney's Consol. Laws, c. 40 (§ 1694) and therefore was guilty of the crime of escape.
In State v. Hayes, supra (52 N.J. Super. 178), this court broadly construed N.J.S. 2A:104-6 in reaching the conclusion that a 17-year-old prisoner escaping from county jail was guilty of the crime of escape, notwithstanding the fact that he was being detained in jail in violation of the statute requiring segregation of minor prisoners from adult ones.
Defendant argues that an escapee is liable under N.J.S. 2A:104-6 only when the escape is by "force or fraud," and that exculpation of a prisoner under this section would still leave him subject to prosecution for the "force" used. That argument, however, begs the question of whether the Legislature did not intend punishment for the escape per se, whatever additional punishment might be assessable for the force. Further, the argument would leave the escapee by "fraud" completely immune.
We conclude that the indictment herein charged defendant with a violation of N.J.S. 2A:104-6.
Affirmed.